IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SARAH WOODS                                                                                    PLAINTIFF

VS.                                                             CIVIL ACTION NO.3:08cv491-TSL-FKB

JO ANNE BARNHART, COMMISSIONER                                          DEFENDANT
SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned United States Magistrate Judge for a report and recommendation regarding the appeal by Sarah F. Woods of the Commissioner of Social Security's final decision denying Woods' application for Supplemental Security Income (SSI). In rendering this recommendation regarding Woods' appeal, the court has carefully reviewed the administrative record regarding Woods' claims [including the administrative decision, the medical records and a transcript of the hearing and supplemental hearing before the Administrative Law Judge ("ALJ")]; plaintiff's motion for judgment on the pleadings [Docket No. 10] and accompanying brief, as well as defendant's motion to affirm the decision of the commissioner [Docket No. 14] and accompanying brief. For the reasons discussed in this report and recommendation, the undersigned recommends that the plaintiff's motion for judgment on the pleadings be granted, in part, and that defendant's motion to affirm the decision be denied.

I. FACTS

In November 2003, Woods applied for Supplemental Security Income (SSI) disability benefits, alleging an onset date of November 1999. The claim was initially denied and was

denied upon reconsideration. Plaintiff requested an administrative hearing. On August 8, 2006, apparently not knowing or understanding that her retained counsel had requested a continuance of the hearing, plaintiff appeared for hearing without her counsel and elected to proceed without him. On March 27, 2007, at the request of plaintiff's counsel, the ALJ convened a supplemental hearing, during which he determined that plaintiff should be seen by an internist to determine her RFC.[1] Following the second hearing, on June 27, 2007, the ALJ issued a decision denying benefits, finding that plaintiff could return to her past relevant, light duty work[2] as a teacher's aide. Plaintiff's request for review was denied by the Appeals Council on June 10, 2008.

Woods, born in 1953, was fifty-three years old at the time of the second hearing and has obtained her GED. She worked from 1997 to 1999 as a substitute teacher for Head Start, which the ALJ classified as light, skilled work with a specific vocational preparation (**SVP**) of 6.[3] For her part, at the hearings, plaintiff claimed that she could no longer work because of the residual problems related to a 1999 back surgery, depression, asthma and diabetes.

---

[1] Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. Section 416.945 (a).

[2] "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. 404.1567(b).

To perform the full range of light work encompasses the ability to stand and walk for six hours in an eight hour work day. See Social Security Ruling 96-9P.

[3] SVP is the amount of time required to prepare for a specific type of job.

## II. ADMINISTRATIVE DECISION

After receiving testimony from plaintiff and reviewing her medical history, the ALJ issued an opinion concluding that

> "[a] consultative examination report of April 21, 2000, shows diagnostic impressions of status post lumbar discectomy; possible torn ligament of he [sic] left knee, degenerative joint disease; low back pain; status post herniated disk at L3-4 level; non-specific chest pain and decreased motor strength.  MRI of December 6, 1999, showed what appeared to be fairly large far left lateral disc herniation at L3-4.

R. 15.  The ALJ rejected plaintiff's claim that she also suffered from a severe mental impairment.  Specifically, he stated:

> The Administrative Law Judge finds that claimant does not have a severe mental impairment.  The diagnostic impressions of the record show he [sic] claimant has presented as a [sic] bitter, angry and poor cooperative.  Dr. Joseph Dunn noted that the claimant presented herself as extremely limited but he said if she is as limited as she presented, it is difficult for him to imagine how she found her way to his office or why anyone would leave her alone in an unfamiliar environment or situation (exhibit B-19F).  At admission to Central Mississippi Medical Center in August 2006, her behavior was inappropriate and she appeared tearful and depressed.  She was noted able to perform activities of daily living independently, she appeared to be normally interacting with caregivers or others that were present and no mental health clinical impression was listed on discharge (exhibit B-17F).  The claimant does not have a mental impairment imposing more than a slight limitation in activities of daily living, maintaining social function, maintaining concentration, persistence or pace and has had no episode of decompensation.  (Stone v. Heckler, 752 F. 2d 1099 (5th Cir.) (1985)).

The ALJ concluded that Woods  medical conditions were "capable of producing limitations in the ability to lift, carry, stand, walk and sit," and therefore, constituted a severe impairment, though not severe enough to meet or medically equal, either singly or in combination, to one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.  R. 15-16.  The ALJ held that Woods could perform her past relevant work as a teacher's aide because she had

> the residual functional capacity to lift and carry 20 pounds occasionally and 10

pounds frequently; stand and walk for 6 hours in an 8-hour day; occasionally stoop, kneel, crouch, crawl, climb, and balance. She can perform no more than occasional overhead work involving her right dominant upper extremity. She is not able to work around excessive dust, fumes, chemicals, in poor ventilation or extreme weather conditions.

R.16.

Because the ALJ determined that Woods could return to her past relevant, light, skilled work, he concluded that she had not been under a disability and denied relief. R. 18-19.

### III. STANDARD OF REVIEW

The undersigned recognizes that this court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
>> such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted)). In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and

not for the courts to resolve.  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).  Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this court.  Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).

## IV. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir.2007) (citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987)).  If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends.  Id. at 448 (citing Lovelace, 813 F.2d at 58).  The burden of establishing disability rests with the claimant for the first four steps and then shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant is able to perform.  Bowen v. Yuckert, 482 U.S. 137, 165 n. 5 (1987).

On appeal, plaintiff maintains that the ALJ erred in rejecting the opinions of consultative, examining physician John Frenz and her primary medical caregiver, nurse practitioner, Lisa Byrd, with regard to his determination of Woods's RFC and that he failed to substantiate his determination of her RFC.  Woods also charges that the ALJ erred in his determination that her mental impairment was not severe, noting that the ALJ failed to reference or otherwise account

for a 2005 evaluation by plaintiff's treating psychiatrist, Dr. Akif Khawaja, following a hospitalization for depression and suicidal ideation.  For its part, the Commissioner maintains that the ALJ did not ignore evidence or misinterpret regulations or case law and that the ALJ adequately expressed his reasons for according the opinions of Frenz and Byrd little probative weight.  The Commissioner acknowledges that the ALJ provided no written assessment of Dr. Khawaja's treatment entries, but contends that the ALJ's pronouncement that he had considered the entire record is sufficient.   In sum, the Commissioner asserts that the law was followed and the ALJ's determination is supported by substantial evidence, such that the decision must be affirmed.  The undersigned disagrees with the Commissioner, and for the reasons which follow, recommends that the case be remanded for further proceedings.

   A. THE ALJ (1) ERRONEOUSLY REJECTED THE OPINION OF EXAMINING PHYSICIAN JOHN FRENZ AND LONG-TIME TREATING NURSE PRACTITIONER LISA BYRD IN MAKING HIS DETERMINATION AS TO PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY, AND (2) FAILS TO SUBSTANTIATE THAT DETERMINATION.

  If the Commissioner's analysis proceeds to step four, the ALJ must determine the claimant's "residual functional capacity" which the Commissioner defines as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a) (2005).  Pursuant to the relevant regulation, RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(b)-(d) (2005).  In making this determination, the ALJ decides whether an applicant retains physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. See Soc. Sec. R. 96-8p (1996).   While assessment of RFC is reserved for the agency, the Fifth Circuit has clarified that the ALJ should consider a medical source opinion in arriving at his conclusions.

Ripley v. Chater, 67 F.3d 552, 557 n. 23 (5th Cir.1995). A "medical source statement" describing types of work that an applicant is still capable of performing, "based on the medical source's findings," may come from a treating physician, a consultative physician or from a non-examining "state agency medical and psychological consultants and other program physicians," who make determinations based on a review of plaintiff's medical records. 20 C.F.R § 404.1513.

As previously mentioned, after her second hearing, the ALJ directed Woods to see an internist for a consultative examination. On April 27, 2007, Woods was examined by Dr. John A. Frenz. Dr. Frenz diagnosed severe obesity; chronic low back strain; pulmonary dysfunction; asthma by history; hypertension, treated; diabetes, treated; and prior lumbar surgical procedure. Tr. 392-395. Dr. Frenz completed a medical source statement, in which he made the following assessments: (1) Woods had the ability to occasionally lift and/or carry a maximum of "less than 10 pounds" for a total of about 1/3rd of an 8-hour workday; (2) she had the ability to stand only briefly in an 8-hour work day and only five minutes without interruption; (3) she had no limitations in her ability to sit; (4) Woods retained no ability to climb, balance, stoop, crouch, kneel or crawl; and (5) Woods' impairments necessitated environmental restrictions as to chemicals, dust, noise and fumes. In section C of the form, Dr. Frenz answered the following questions affirmatively:

>  1. ARE THE LIMITATIONS, TO THE DEGREE CHECKED ABOVE, NORMALLY EXPECTED FROM THE TYPE AND SEVERITY OF THE DIAGNOSES IN THIS CASE?
>  2. ARE THE DIAGNOSES IN THIS CASE CONFIRMED BY OBJECTIVE FINDINGS?

As to the last question, "ARE YOU BASING YOUR OPINION ABOVE PRIMARILY ON THE

PATIENT'S SUBJECTIVE COMPLAINTS?," Dr. Frenz answered, "No."

Dr. Frenz's conclusions as to Woods's RFC seem mostly consistent with the October 2006 assessment made by Woods' primary health care provider, nurse practitioner Lisa Byrd, who had been treating Woods since January, 2003. Specifically, on October 2, 2006, Byrd completed a "Multiple Impairment Questionnaire," wherein she diagnosed Woods with "Right shoulder-torn rotator cuff; chronic pain; carpal tunnel syndrome bilaterally- radiculopathy with herniation L3-L4; degenerative disc disease; diabetes; diabetic neuropathy, hypertension; COPD-asthmatic tendency." She further purported to assess Woods's "residual functional capacity" in a "competitive five day a week work environment" as follows: (1) She had the ability to sit in a work environment to 0-1 hours in an eight-hour day; (2) she had the ability to stand/walk in the work environment 1-1 hours in an eight-hour day; (3) Woods would need to get up and move around every thirty minutes to an hour; (4) Woods could only occasionally lift 0 to 5 pounds; and (5) she could occasionally carry 0 to 5 pounds. Byrd, unlike Dr. Frenz, further addressed Woods's mental impairments, concluding that Woods's anxiety attacks (and pain) impacted her physical limitations.

Although the ALJ apparently accepted Dr. Frenz's conclusions as to the existence of severe impairments,[4] finding in accord with Dr. Frenz that Woods had the severe impairments of diabetes mellitus, status post lumbar discetomy, asthma; and history of rotator cuff tear, as previously indicated, he did not accept Dr. Frenz's opinion evidence or that of her primary

---

[4] In the portion of his opinion wherein the ALJ made his findings as to Woods's impairments, the ALJ actually cites to a 2000 consultive examination, wherein plaintiff was assessed only for joint disease. He did not in this section actually mention Dr. Frenz's more recent and comprehensive examination. Instead, Dr. Frenz's examination is first addressed in the section of the opinion dealing with claimant's RFC.

healthcare provider, nurse practitioner, Lisa Byrd, as to her RFC, concluding:

> Dr. Frenz's reported residual functional capacity in a Medical Source Statement is not consistent with his reported objective findings, with particular attention to his reported strength findings in extremities and the absence of edema. The functional capacity opinion offered by Lisa Byrd, Ph.D., CFNP is not entitled to significant weight as it is not consistent with other opinions from physicians (Social Security Ruling 00-6p). Moreover, the opinion is not supported by the objective findings reported from the Bolton Clinic or the Family Clinic where she is associated. Noted is when signing the opinion contained in exhibit B-21F, it is signed as a CFNP and not as a Ph.D. As shown in exhibit B-8F, prior to May 2004, no treating physician offered an opinion of limitations and restrictions.

The only other opinion as to claimant's RFC in the record was that of the non-treating, non-examining state agency consultant, who found that claimant retained the capacity to lift twenty-five pounds, to stand/walk for six hours a day and had no postural or manipulative limitations, but must avoid concentrated exposure to fumes, odors, dusts and poor ventilation. see R. 167-174. This finding apparently equates to a finding that claimant was fit for medium work. see R. 167-174 and 117.

In rejecting Dr. Frenz's opinions regarding claimant's RFC, the ALJ cited, but failed to provide any analysis of the factors set forth in 20 C.F.R. § 416.927(d) (outlining factors to be considered in connection with evaluating opinion evidence from a medical source). Further, having discounted Dr. Frenz's opinion, the ALJ, without reference to the considerations set forth in SSR 06-03p[5] (providing guidance on considering opinions and other evidence from sources

---

[5] The opinion recognizes that in the age of managed care, in certain circumstances, "it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." The opinion further recognizes that
> although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the

who are not "acceptable medical sources"), concluded that Bryd's RFC opinion was likewise not entitled to significant weight because she signed as certified nurse practitioner and because it was not consistent with other opinions from physicians or with the objective findings in her records.  In so ruling, the ALJ did not purport to identify or explain the manner in which Byrd's extensive and detailed records were inconsistent with her or Frenz's assessment of Woods's RFC.[6]

Again, besides Dr. Frenz's RFC pronouncement, the only other opinion in the record as to claimant's RFC was expressed by the non-treating, non-examining state agency consultant, who, as previously stated, found in May 2004, that claimant was fit for medium work with certain environmental limitations.  The court observes that in arriving at his conclusion that Woods retained the RFC for light work, the ALJ did not actually mention the 2004 state agency RFC determination as support for his conclusion.  Rather, having dismissed the opinions of two medical professionals who had actually recently examined the claimant, the ALJ concluded that the absence of edema in the extremities did not warrant the strength findings assessed by Frenz and that a lack of repeated hospitalizations for asthma did not indicate constant breathing problems or constant asthma.   In this regard, the undersigned agrees with Woods that the ALJ impermissibly substituted his lay opinion for the examining doctor's as to the medical evidence.

---

adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

[6] The record contains many of Byrd's progress notes regarding her treatment of Woods. R. 178-192; 250-275.  Byrd's opinion as to Wood's RFC, which she purports to support with clinical findings, begins on page 286 of the record.

See Williams v. Astrue, 2009 WL 4716027 (5th Cir. Dec. 10, 2009)("ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."). Further, to the extent that the ALJ implicitly relied on the 2004 agency determination, the court finds that he erred by failing to explain the weight given to the opinions of a state agency medical consultant, as the ALJ must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for the agency. SSR 96-6p.[7] While the ALJ's finding of an RFC for light work is arguably supported by the nontreating, nonexamining source's 2004 finding of an RFC for medium work, see 20 CFR § 416.967(c) (Medium work includes all of the demands of light work, with some additional exertional requirements), in the undersigned's opinion, given the remoteness of the examination, the ALJ's failure to expressly adopt it, and the lack of any explanation by the non-treating, non-examining consultant of his assessment, the court is not persuaded that it constitutes substantial evidence with regard to Woods's RFC. See Rocha v. Astrue, 2008 WL 763070, p. 5 (N.D. Tex March 21, 2008) (concluding that state agency determination that claimant retained ability to "perform

---

[7] This opinion provides in pertinent part:

> Although the administrative law judge and the Appeals Council are responsible for assessing an individual's RFC at their respective levels of administrative review, the administrative law judge or Appeals Council must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists. At the administrative law judge and Appeals Council levels, RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s). Again, they are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence.

medium work is not, by itself, substantial evidence to support a claimant's ability to perform light work"). In light of the ALJ's failure to appropriately assess Frenz's and Byrd's opinion evidence before rejecting it and the fact that the 2004 evaluation by the nontreating, nonexamining state agency medical consultant does not necessarily constitute substantial evidence as to Woods's RFC, the undersigned recommends that plaintiff's motion be granted to the extent that the case should be remanded to ALJ for reconsideration of her RFC. Such reconsideration may require that the ALJ request treating and examining sources to provide additional evidence or clarification as to Woods's impairments and her residual functional capacity.

B. THE ALJ ERRED IN HIS DETERMINATION THAT THE PLAINTIFF'S PSYCHOLOGICAL IMPAIRMENTS WERE NOT LEGALLY SEVERE.

By this assignment of error, Woods maintains that the ALJ erred at Step 2, when he concluded that plaintiff's mental impairments were not severe. According to Woods, the ALJ's specific reference only to a consultative examination by Dr. Dunn, wherein the doctor stated that plaintiff presented as "bitter, angry and poorly cooperative",[8] and to a 2006 emergency room visit, where she was observed to have performed activities of daily living normally, without any specific mention of Byrd's treatment of Woods' for depression and anxiety or to a hospitalization where she was seen by psychiatrist Akif Khawja for depression and suicidal ideation, constitutes error warranting relief. For its part, the government takes the position that

---

[8] Apparently owing to Woods' lack of cooperation, in concluding his report on Woods, Dr. Dunn arrived at a limited diagnostic impression, "the best that I could do in terms of diagnostic impression would be ruling out a psychotic disorder not otherwise specified and ruling out Paranoid Personality Disorder."  R. 238.

the ALJ's blanket statement that he considered all of the evidentiary record is sufficient and he need not have mentioned every piece of evidence. The undersigned disagrees and recommends that the case be remanded on this issue as well to allow the ALJ to consider all of the pertinent evidence related to Woods's mental status.

At the second step of the Commissioner's five-step analysis, the ALJ is required to determine whether the claimant's impairment is "severe," irrespective of age, education and work experience. According to the standard set forth by the Fifth Circuit, an impairment can be considered not severe "only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Loza v. Apfel, 219 F.3d 378, 392 (5th Cir. 2000). At Step 2, the claimant need only make a "de minimus showing that her impairment is sever enough to interfere with her ability to work." Anthony v. Sullivan, 954 F. 2d 289, 293 n. 5 (5th Cir. 1992).

Here, the ALJ based his finding of a nonsevere mental impairment on Dr. Dunn's statement that Woods presented as "bitter, angry and poorly cooperative," as well as notes from an August 2006 hospital admission, wherein she complained of episodes of lightheadedness, appeared tearful and depressed, but was observed to be interacting normally.[9] R. 222-223. The record, however, further contained evidence from Dr. Khawja to the effect that in June 2005, he referred plaintiff for inpatient treatment for severe depression and suicidal ideation. Dr. Khawja's progress notes from the hospitalization assess Woods as having a Global Assessment

---

[9]It is not altogether clear that Woods presented at this emergency room visit specifically seeking treatment for any alleged mental health condition. Instead, she complained of light headedness.

13

Functioning (GAF)[10] score of 40/50-60, which could be indicative of severe or moderate symptoms.[11]  The record also contains numerous notes from Byrd, wherein she either noted her own treatment of plaintiff for depression and anxiety or Dr. Khawja's treatment of Woods for depression.  In fact, Byrd's October 2006, assessment of Woods's functional capacity recites that Woods suffered from anxiety attacks which impaired her ability to work in a competitive environment.  None of these findings or observations are specifically referenced in the ALJ's opinion.  While the undersigned does not agree with Woods that the foregoing necessarily conclusively establishes that she has a severe mental impairment, the undersigned does agree that, under the circumstances, this medical evidence, which stands in contradiction to the ALJ's findings, certainly warranted discussion.  Given the absence of any discussion, the court cannot be sure that ALJ fulfilled his duty to consider all of the evidence.  Since the record does not demonstrate that the ALJ considered all the evidence, the undersigned recommends that the case be remanded for further consideration on this issue as well.

---

[10] The GAF scale is used to rate "overall psychological functioning on a scale of 1-100," with 100 representing "superior functioning." American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).  A GAF score of 41-50 indicates "serious symptoms ( e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or moderate difficulty in social, occupational, or school functioning ( e.g., no friends, unable to keep a job)." Under the GAF scale, a score of 51-60 equates to moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. at 34

[11] The global assessment of functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-36.

## VI. CONCLUSION

For the above reasons, the undersigned recommends that the Plaintiff's Motion to Reverse and Remand be granted, and that the Defendant's Motion for Order Affirming the Decision be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 23rd day of June, 2011.


                s/F. Keith Ball
                UNITED STATES MAGISTRATE JUDGE